## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE (the "Agreement") is stipulated and entered into between CARLOS AMAGO CASTELLANOS ("First Party") and MDM BRICKELL HOTEL GROUP, LTD d/b/a JW MARRIOTT HOTEL MIAMI and MG HOSPITALITY SERVICES, INC. (collectively the "Second Party") (collectively the "Parties") on October 5, 2023 (the "Effective Date") for the purposes set forth below as follows:

**WHEREAS**, the First Party was engaged in an employment relationship with the Second Party from approximately November 15, 2022 until March 17, 2023; and

**WHEREAS**, a dispute has arisen related to the First Party's employment relationship with the Second Party during this time period and the cessation thereof; and

**WHEREAS**, the First Party has alleged claims against the Second Party related to their employment relationship and the cessation thereof and has filed a lawsuit against the Second Party styled as *Carlos Amago Castellanos v. MDM Brickell Hotel Group, LTD d/b/a JW Marriott Hotel Miami*, which is now pending in United States District Court in the Southern District of Florida (the "Lawsuit"); and

**WHEREAS**, the Parties, wishing to avoid the delay, expense, and uncertainty of further proceedings, enter into this Agreement to resolve their dispute and settle all claims and potential claims that the First Party could have asserted against the Second Party in the Lawsuit or any other matter stemming from the circumstances of the Parties employment relationship, as further set forth below; and

***NOW THEREFORE***, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Recitals.** The above recitals of this Agreement are true and correct and are hereby incorporated by reference.

2. **Consideration.** In consideration for the promises contained in this Agreement, the Second Party agrees to pay the First Party the total settlement sum of $7,539.63 ("Payment") made in the form of three checks. The first check payable to CARLOS AMAGO CASTELLANOS for $981.63, for which a W-2 shall be issued to him. The second check payable to CARLOS AMAGO CASTELLANOS for $58.00, for which a 1099 shall be issued to him. The third check shall be issued to the FAIRLAW FIRM for $6,500.00, for attorneys' fees and costs incurred in their representation of the First Party, for which a 1099 shall be issued to FAIRLAW FIRM. The checks shall be delivered to Brian H. Pollock, Esq. at the Fairlaw Firm, 135 San Lorenzo Ave., Suite 770, Coral Gables, Florida 33146, within ten (10) days of the Court's approval of this Agreement as set forth in Section 3 below.

1

3.      **Approval of Agreement by Court.** Upon the Parties' execution of this Agreement, pursuant to *Lynn's Food Stores, Inc. v. U.S. Dep't. of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982), the Parties agree to file a Joint Motion for Approval and Proposed Order jointly requesting that the Court approve this Agreement and enter an order dismissing the Litigation with prejudice conditioned upon the Court retaining jurisdiction to enforce the terms of this Agreement. Nothing in this Agreement should be construed from prohibiting either Party from filing this Agreement as an Exhibit and/or on CM/ECF and/or on public docket in the event that either Party moves to enforce the terms of this Agreement and/or for collection.

4.      **No Consideration Absent Execution of this Agreement.** First Party understands and agrees that he would not receive the monies and/or benefits specified in paragraph "2" above, except for his execution of this Agreement and the fulfillment of the promises contained herein.

5.      **General Release of Claims.** The First Party, on his own behalf and, as applicable, on behalf of his heirs, executors, administrators, representatives, attorneys, and assigns (the "Releasors"), does hereby release, acquit, and forever discharge the Second Party and, as applicable, its predecessors, successors and assigns; parent corporations, subsidiary corporations, and affiliated corporations; and its current and former officers, directors, shareholders, partners, employees, representatives, insurers, attorneys and agents (the "Releasees ") from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that the First Party has or may now have, against the Second Party, and the included Releasees set forth above, from the beginning of the world until the Effective Date of this Agreement. The First Party's release of claims contained herein includes all claims that were or could have been asserted in the Lawsuit or relate in any way to circumstances of the First Party's employment relationship with the Second Party and the cessation thereof for whatever reason. The First Party's release includes, but is not limited to, claims arising under the Florida Civil Rights Act ("FCRA"); Title VII of the Civil Rights Act of 1964, as amended; the Florida Private Whistleblower's Act ("FWA"); the Fair Labor and Standards Act, as amended ("FLSA); the Equal Pay Act; the Age Discrimination in Employment Act of 1967, as amended ("ADEA"); or the Worker Adjustment and Retraining Notification Act of 1989, as amended; the Employee Retirement Income Security Act; the Americans with Disabilities Act, as amended ("ADA"); Sarbanes-Oxley; Dodd-Frank; the federal False Claims Act; the Florida False Claims Act; and any other state False Claims Acts; any waivable laws governing whistle-blowing or retaliation, including retaliation under the Florida Workers Compensation Act; any federal or state antitrust laws; and any other federal, state or local civil rights or employment law, and/or contract or tort law.

The First Party agrees that it is his express intent to enter into this Agreement as full and final settlement of all claims relating to the First Party's employment relationship with the Second Party and the cessation thereof for whatever reason, and understands that this Agreement releases all claims against the Second Party, and the included Releasees set forth above, that are based on any facts or omissions occurring on or before the Effective Date of this Agreement, even if the First Party does not, at the time the First Party signs this Agreement, have actual or constructive knowledge of those facts or omissions. The First Party understands that if the facts giving rise to this release are found later to be different from or other than the facts now believed by him to be true, or if new facts come to his attention, he accepts and assumes the risk of such possible

differences in facts and agrees that the release above shall remain effective as to the claims released by the Agreement, notwithstanding such new or different facts, and the First Party agrees not to challenge the enforceability of any provision of this Agreement in any court of competent jurisdiction or arbitration on this or any other basis.

Except for an action seeking enforcement of this Agreement, if the First Party should later initiate or participate in any action or legal or administrative proceeding against the Second Party or any included person or entity, for any claim arising or accruing before and through the Effective Date, this Agreement will be conclusive evidence that any such claims have been released.

6. **No Wages Due.** The First Party agrees that through this Agreement, he has been or will be paid all amounts owed to the First Party under the Fair Labor Standards Act ("FLSA"). The First Party acknowledges that the consideration paid pursuant to this Agreement is more than the First Party would otherwise be legally entitled to receive in any claim for unpaid wages brought under the FLSA and that the Payment set forth in Section 2 of this Agreement is adequate consideration for the exchange of the agreements and covenants contained herein.

7. **No Rehire.** The First Party shall not apply for employment with the Second Party and, if he does, the Second Party will not rehire the First Party. The First Party expressly waives and releases any claim for failure to hire if such claim is brought.

8. **Neutral Employment Reference.** The Parties agree that the Second Party will provide the First Party with a neutral employment reference which will confirm his dates of work, position held, and last rate of pay, without reference to any claim, lawsuit, or resolution thereof.

9. **Attorneys' Fees, Costs and Expenses.** The Parties shall bear their own attorneys' fees, expert fees, consultant fees, accounting fees, and any other types of fees or expenses, and all costs, including but not limited to all fees and costs of any kind incurred in connection with their dispute and the negotiation and preparation of this Agreement.

10. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

11. **Confidentiality.** Plaintiff agrees not to disclose the terms of this Agreement or the fact that he participated in the Lawsuit, which was settled, to any person other than his respective attorney(s), tax or other professional advisor(s), spouse, or as otherwise necessary to effectuate the terms of this Agreement, or as required by law. The First Party further agrees not to discuss his alleged claims or this case any further to any person or agency. Upon inquiry by any person about the status of the First Party's dispute with the Second Party, the First Party or his representatives shall state: *"the matter has been amicably resolved."* If the First Party is (a) subpoenaed in another action, (b) served with a demand or request in another action, or (c) served with any legal process by any person or entity who is not a party to this Agreement, seeking information or documents regarding the Lawsuit, or this Agreement, the First Party shall within five business days notify the Second Party of the request, demand or subpoena so as to allow the Second Party to seek protection from the relevant court(s).

12.     **Covenant of Non-Disparagement.** The Parties covenant and agree never to make any disparaging remarks of any sort regarding the facts or subject matter of the Lawsuit or otherwise communicate any disparaging remarks or speak ill of the other Party, or any included person or entity, to any third party at any time following the execution of this Agreement. The Parties agree that the business and community reputation of the Other Party would be substantially and irreparably harmed by such disparaging conduct.

13.     **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of Florida without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, any party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

14.     **Amendment.** This Agreement may not be modified, altered or changed except in writing and signed by all Parties wherein specific reference is made to this Agreement.

15.     **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto with respect to the subject matter herein, and fully supersedes any prior agreements or understandings between the Parties.

16.     **Counterparts.** This Agreement may be executed in multiples, all of which shall be deemed an original but all of which together shall constitute one and the same Agreement. Facsimile or electronic mail signatures shall be considered as valid signatures for purpose of execution of this Agreement. The parties agree that electronic signatures are valid on this agreement. A copy or .pdf version of this fully executed Agreement shall be considered the same as an original for all purposes.

The Parties, intending to be legally bound, hereby enter this Agreement as indicated by their signatures below:

CARLOS AMAGO CASTELLANOS

By: Carlos Amago Castellanos (Nov 3, 2023 14:01 EDT)

MDM BRICKELL GROUP, LTD, LLC d/b/a JW MARRIOTT HOTEL MIAMI and MG HOSPITALITY SERVICES, INC.

By: _____

Title: CORP. RISK & COMPLIANCE MNGR